IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

_____ FILED _____ ENTERED
_____ LODGED _____ RECEIVED

SEP 2 9 1999

AT BALTIMORE
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
BY _____ DEPUTY

WILLIAM COLEMAN,                    :

    Plaintiff                    :

        v.                    :    Civil Action No. L-98-3111

STATE OF MARYLAND, et al.,          :

    Defendants                   :

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. ..

JOHNNIE S. HOLMES,                  :

    Plaintiff                    :

        v.                    :    Civil Action No. L-98-3112

JOSEPH SACCHET, et al.,             :

    Defendants                   :

.. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. .. ..

RALPH J. PAULERO,                   :

    Plaintiff                    :

        v.                    :    Civil Action No. L-99-862

STATE OF MARYLAND, et al.,          :

    Defendants                   :

o0o

## MEMORANDUM

These actions are brought by three former Maryland prisoners seeking declaratory relief and



damages for periods during which they were improperly incarcerated.[1]   Each of the Plaintiffs was released after seeking habeas corpus relief in State court, arguing that his diminution credits were being improperly calculated. Each was released after the date on which he claimed he was entitled to be released. Because the cases present similar issues they will be consolidated.

Under Maryland law, prisoners earn diminution credits for good behavior, working at institutional jobs, attending educational programs, and participating in designated special projects. Md. Ann. Code Art. 27, §700 and §704A. For sentenced prisoners, good conduct credits are awarded in a lump sum at the beginning of the sentence and may be revoked if the prisoner violates prison rules. §700(d) and (g). Industrial, educational and special project credits are awarded on a monthly basis. §700(e), (f) and (h). Diminution credits are subtracted from the ending date of a prisoner's sentence(s) to arrive at the date upon which he is entitled to be released from prison under mandatory supervision. Md. Ann. Code Art. 41, §4-501(13). A prisoner released under mandatory supervision is subject to the same rules and supervision as a parolee. Md. Ann. Code Art. 41, §4-612(c) and (d).

Over the past thirty years, the statutes governing diminution credits and mandatory supervision have undergone many changes. Prior to 1970, mandatory supervision did not exist. When a prisoner had served his sentence, less any diminution credits, he was released. He was not subject to supervision and could not be reincarcerated under the same sentence. The original mandatory supervision statute provided that:

> Any person sentenced after July 1, 1970, to the jurisdiction of the

---

[1]The request for declaratory relief is moot as all of the Plaintiffs have been released. *See Williams v. Griffin*, 952 F.2d 820, 823 (4th Cir. 1991).

2

> Department of Correction and having served his term or terms, less
> the deductions provided for in Article 27, §700 of this Code, shall,
> upon release, be deemed as if released on parole until the expiration
> of the maximum term or terms for which he was sentenced. Said
> released prisoner shall be subject to all law, rules, regulations and
> conditions applicable to parolees and shall remain under the
> supervision of the State Division of Parole and Probation until the
> expiration of the maximum term or terms for which he was
> sentenced.

1970 Md. Laws Ch. 406. This meant that if a prisoner released under mandatory supervision violated the terms of his release, he was entitled to the same procedural protections as a person accused of violating his parole, and if found to have committed a violation, could be reincarcerated to serve the remainder of his sentence less any credit for street time allowed by the Parole Commission.[2]

The original statute was silent regarding what happened to the diminution credits of a person reincarcerated for violating the conditions of his release. The Division of Correction, ("DOC"), took the position that the credits were rescinded by operation of law. This interpretation was ultimately adopted by the Maryland Court of Appeals. *Frost v. State*, 336 Md. 125, 138, 647 A.2d 106, 113 (1994).

In 1989 the mandatory supervision statute underwent a major revision. Among other things, a provision was added allowing the Parole Commissioner conducting a revocation hearing to "rescind all diminution credits previously earned on the sentence or any portion thereof." 1989 Md. Laws Ch. 307.

---

[2]Md. Ann. Code Art. 41, §4-511(d) provides that if parole is revoked "the prisoner shall serve the remainder of the sentence originally imposed unless the Commission member hearing the parole revocation, in the member's discretion, grants credit for time between release on parole and revocation of parole." Credit allowed under this provision is commonly referred to as "street time."

3

Arthur Crawmer, Director of Classification for the DOC, became concerned that in some situations where the Parole Commission allowed credit for street time and did not rescind an equivalent or greater amount of diminution credits, the prisoner would have to be immediately re-released, even if a new sentence had been imposed. L-99-3111, Paper No. 11, attached affidavit of Arthur Crawmer. Mr. Crawmer sought legal advice from counsel assigned to the DOC. Based upon this advice, he developed a procedure whereby in situations where the Parole Commission allowed street time **and** did not rescind all of a mandatory supervision release violator's diminution credits, staff were to **subtract** from the total number of diminution credits which had been earned, **both** the diminution credits which were rescinded by the Parole Commission **and** an amount equal to the amount of street time which had been allowed. *Id.*; *Commitment Procedures Manual*, Chapter 90-134-2c (revised 10/05/92). The practice of subtracting an amount of diminution credits equal to the amount of street time allowed was ultimately rejected by the Maryland Court of Appeals. *Maryland House of Correction v. Fields*, 348 Md. 245, 269-71, 703 A.2d 167, 179-80 (1997).[3]

In 1992 the statute governing diminution credits was amended to increase the maximum number of credits which could be earned. Previously, prisoners were limited to earning a maximum of fifteen days diminution credit per month - five for good conduct, five industrial or educational

---

[3]Merrill Fields, a mandatory supervision release violator with both pre and post October 1, 1992 sentences, had filed a habeas corpus petition in the Circuit Court for Baltimore City arguing that his good conduct credits should be calculated at the rate of ten days per month for his post October 1, 1992 sentences and that the DOC had improperly deducted from his diminution credits the street time allowed by the Parole Commission. The petition was granted and respondent appealed. On December 27, 1996 the Court of Special Appeals issued a short, published opinion affirming the grant of habeas corpus relief. *Maryland House of Correction v. Fields*, 113 Md. App. 136, 141, 686 A.2d 1103, 1106 (1996). Respondent sought a writ of *certiorari* to the Maryland Court of Appeals which was granted on February 14, 1997. 344 Md. 569, 688 A.2d 447 (1997). On December 15, 1997, the Court of Appeals affirmed the decision of the Court of Special Appeals.

credits and five special project credits. Effective October 1, 1992, the maximum number of credits

which could be earned per month was increased to twenty. The revised statute also provided that

prisoners whose term of confinement did **not** include a sentence for a crime of violence or a drug

crime, would receive ten days good conduct credit per month, while those whose term of

confinement did include a sentence for such a crime, would receive five days good conduct credit

per month. The act revising the statute included an uncodified provision that "this Act shall apply

only to a term of confinement imposed on or after October 1, 1992." 1992 Md. Laws Ch. 588.

Based upon the statutory definition of a term of confinement as "the period from the first day

of the sentence beginning first through the last day of the sentence ending last,"[4] the DOC interpreted

the uncodified provision of the Act to mean that if a prisoner was serving multiple sentences, some

of which were imposed before October 1, 1992 and some of which were imposed after October 1,

1992, he was only entitled to earn five days good conduct credit per month on **all** of his sentences.

*Commitment Procedures Manual*, Chapter 90-110 (Rev. 10/28/94). This interpretation was

ultimately rejected by the Maryland Court of Appeals. *Fields*, 348 Md. at 267-68, 703 A.2d at 178.[5]

William Coleman was committed to the custody of the DOC to serve six partially concurrent

six year sentences. His term of confinement began on July 21, 1989, and had a maximum expiration

---

[4]Art. 27, §700(a).

[5]Shortly afterwards, the reasoning in *Fields* was applied to situations where prisoners had multiple sentences, of which at least one was for an offense making the prisoner eligible to earn only five days good conduct credit and at least one did not exclude him from eligibility. *Beshears v. Wickes*, 349 Md. 1, 706 A.2d 608 (1998). Recently, the Court of Appeals explained that its holdings in *Fields* and *Wickes* did not mean that it was inappropriate to treat all of a prisoner's sentences as a single term of confinement in all circumstances. *Secretary, Dept. of Public Safety & Correctional Services v. Henderson*, 351 Md. 438, 718 A.2d 1150 (1998).

5

date of December 25, 1995. L-98-3111, Paper No. 1; Paper No. 11, attached Sentence Calculation

Worksheet.

While serving these sentences, Mr. Coleman earned a total of 761 days diminution credit and

was released under mandatory supervision on November 24, 1993. He was accused of violating the

terms of his release and returned to the custody of the DOC on March 23, 1995. A revocation

hearing was held in front of Parole Commissioner Frank Pappas on April 21, 1995. Commissioner

Pappas found that Mr. Coleman had violated the terms of his release, revoked his release, allowed

credit for thirteen months or 395 days of the time that Mr. Coleman had been out of custody, and

revoked 300 days diminution credit. *Id.*

Subsequently, Mr. Coleman received two additional sentences - a one year sentence

beginning on August 18, 1995 and a two year sentence beginning on May 2, 1995. This caused his

maximum expiration date to become May 2, 1997. *Id.*

The DOC calculated his new mandatory supervision release date as being approximately

November 5, 1996. They arrived at this date by applying diminution credits which Mr. Coleman had

earned since his return to custody, and 66 days of the 761 days diminution credit that he had earned

prior to his release.[6] Mr. Coleman, arguing that he was entitled to 461 of the diminution credits he

had earned prior to his release, sought habeas corpus relief in the Circuit Court for Anne Arundel

County.[7]  L-98-3111, Paper No. 14, attached habeas corpus petition. Ultimately, his petition was

---

[6]This figure was arrived at by subtracting from the 761 days diminution credit the 300 days
rescinded by Commissioner Pappas **and** subtracting an amount equal to the 395 days street time
which was allowed by Commissioner Pappas.

[7]This figure is arrived at by subtracting from the 761 days diminution credit only the 300
(continued...)

6

granted and he was released on September 11, 1996. *Id.*, attached order. Had the full 461 days diminution credit been applied in a timely manner, he would have been released on or about February 1, 1996.

Mr. Coleman filed this action on September 14, 1998, seeking compensation for the period he was incarcerated beyond when he was entitled to be released under mandatory supervision, approximately February 1, 1996, to September 11, 1996, the date he was actually released. Named as defendants are the State of Maryland Department of Public Safety & Correctional Services; Ronald Moats, Warden of Roxbury Correctional Institution; Alexander Francis, Warden of the Maryland Correctional Pre-Release System; Richard Lanham, former Commissioner of the DOC; Melanie Pereira, former Deputy Commissioner; Ava Gift, Commitment Supervisor for the Hagerstown region; and Karen Elliot, Case Manager Supervisor at Roxbury Correctional Institution.[8]

Ralph Paulero was committed to the custody of the Division of Correction, ("DOC"), to serve a three year sentence that began on November 27, 1988. Subsequently, he received a seven year consecutive sentence. These sentences had an original maximum expiration date of November 27, 1998. Mr. Paulero was paroled in May 1994. He committed a new offense while on parole, and on February 22, 1995 he was sentenced to seven years. This sentence was given a starting date of

---

[7](...continued)
days which were rescinded by Commissioner Pappas.

[8]Insofar as Mr. Coleman and the other plaintiffs are seeking damages from the State of Maryland and from the other defendants in their official capacities under 42 U.S.C. §1983, their claims are barred by the Eleventh Amendment to the United States Constitution. *See Penhurst State School and Hospital v. Halderman*, 465 U. S. 89, 100 (1984).

January 3, 1995, making it partially concurrent with his earlier sentences.[9]  His parole on his earlier

sentences was revoked.  Mr. Paulero's maximum expiration date became January 3, 2002.  L-99-862,

Paper No. 2; Paper No. 14, Exhibit 1.

The DOC calculated Mr. Paulero's good conduct credits at a rate of five days per month on

all of his sentences.  This amounts to approximately 786 days good conduct credit.[10]  If on the other

hand, good conduct credits are calculated at the rate of five days per month for the period when Mr.

Paulero was serving only his pre-1992 sentences and at ten days per month from the date his post

1992 sentence was imposed, he would have received approximately 1,237 days good conduct

credit.[11]  By Mr. Paulero's calculations, he should have been released under mandatory supervision

in October 1996.  L-99-862, Paper No. 2.  In March 1997, Mr. Paulero filed a petition for writ of

habeas corpus in the Circuit Court for Anne Arundel County.  He was released on March 28, 1997,

after DOC staff reviewed his petition and recalculated his diminution credits.

In this action,[12] Mr. Paulero is seeking compensation for the period he was in custody beyond

---

[9]Mr. Paulero has a number of other sentences which are not relevant to the analysis of his claims.

[10]This calculation is for the period of November 27, 1988 through January 3, 2002 with an assumption that Mr. Paulero was allowed full credit for all of the time he was out on parole.  This is probably an oversimplification of the situation since prisoners whose parole is revoked because they have committed a new offense rarely receive full credit for the time they were on parole.

[11]Mr. Paulero asserts that he was entitled to a total of 1,175 days good conduct credit.  This figure probably includes an adjustment for time that he was on parole that was not credited against his sentence.  *See* n.10 *supra*.

[12]Mr. Paulero ordinally filed suit in this Court on December 14, 1998.  That action, *Ralph Paulero v. State of Maryland, et al.,* Civil Action No. L-98-3985, was voluntarily dismissed on January 27, 1999.  On February 8, 1999, Mr. Paulero filed essentially the same complaint in the Circuit Court for Baltimore County.  On March 26, 1999, Defendants removed the action to this
(continued...)

8

when he was entitled to be released under mandatory supervision - from approximately October 1996 until March 28, 1997. Named as Defendants are the State of Maryland, Department of Public Safety and Correctional Services, Division of Correction; Ronald Moats, Warden of Roxbury Correctional Institution; Alexander Francis, Warden Maryland Correctional Pre-Release System; Richard Lanham, former Commissioner of the Division of Correction; Melanie Pereira, former Deputy Commissioner of the Division of Correction; and Ava Gift, Supervisor of the Hagerstown Regional Commitment Office.

Johnnie Holmes was committed to the custody of the DOC to serve sentences commencing on July 20, 1989. His maximum expiration date was November 4, 1995. He was released under mandatory supervision on December 13, 1993 due to the application of 692 days diminution credit. While under mandatory supervision he was convicted of new offenses, and on March 6, 1995, sentenced to a total of six years commencing January 25, 1995, with a maximum expiration date of January 25, 2001. L-98-3112, Paper No. 1; Paper No. 8, attachments.

Mr. Holmes' mandatory supervision was revoked on June 7, 1995, by Parole Commissioner Dan Zaccagnini. Commissioner Zaccagnini directed that Mr. Holmes be allowed street credit for the period from his release on December 13, 1993 until August 17, 1994, a total of 504 days. He also specified that no diminution credits were being rescinded. L-98-3112, Paper No. 12, attached revocation order.

The DOC subtracted from Mr. Holmes' previously earned diminution credits an amount

---

[12](...continued)
Court where it was docketed as Civil Action No. L-99-862.

equal to the street time allowed.[13]  On his new sentences, the DOC calculated his good conduct credits at the rate of five days per month.  On April 25, 1997, Mr. Holmes filed a habeas corpus petition in the Circuit Court for Washington County alleging that his diminution credits were being improperly calculated.  That same day, his credits were recalculated and he was released under mandatory supervision.  His habeas corpus petition was dismissed as moot.  L-98-3112, Paper No. 12, attachments.

On September 14, 1998, Mr. Holmes filed suit in this Court seeking compensation for the period he was incarcerated past his mandatory supervision release date - approximately October 5, 1996, until the date he was actually released - April 25, 1997.  Named as defendants are Joseph Sacchet, Warden Maryland Correctional Training Center; Richard A. Lanham, former Commissioner of the DOC; Melanie Pereira, former Deputy Commissioner and Ava Gift, Commitment Supervisor for the Hagerstown region.

Currently pending in all three cases are motions to dismiss or for summary judgment.[14] Plaintiffs oppose the motions and assert that they should be allowed to proceed with discovery under Fed. R. Civ. P. 56(f).  Plaintiffs offer no hint as to what type of information they hope to obtain through discovery, nor any indication as to how it might help them oppose the pending motions.  Their bald assertion that they should be allowed to proceed with discovery is insufficient.  *Nguyen*

---

[13]According to Mr. Homes, this amounted to 504 days. L-98-3112, Paper No. 1.  According to the Defendants it amounted to 248 days. L-98-3112, Paper No. 8, attached affidavit of Arthur Crawmer.  The exact number of credits is not relevant to the disposition of the pending motions.

[14]In L-99-862, Defendants captioned their motion as simply a Motion to Dismiss.  In as much as Plaintiff in that case submitted exhibits in opposition to the motion which have been considered by the Court, the motion will be treated as one for summary judgment. *See* Fed. R. Civ. P. 12(b).

10

*v. CNA, Corp.*, 44 F.3d 234, 244 (4th Cir. 1995). There is no factual dispute as to how Plaintiffs'

release dates were calculated and why.[15] The policies applied to Plaintiffs were thoroughly discussed

by the Court of Appeals in *Fields*. Moreover, it is noted that Plaintiffs had sufficient information

to successfully pursue their state habeas corpus claims. Delaying a ruling on the pending motions

to allow Plaintiffs to conduct unspecified discovery would serve no useful purpose.

## Illegal Seizure

Mr. Coleman and Mr. Holmes assert that the fact that they were held beyond their release

dates constitutes an illegal seizure in violation of the Fourth Amendment to the United States

Constitution. L-98-3111, Paper No. 1; L-98-3112, Paper No. 1. The Fourth Amendment's

prohibition on unreasonable seizures applies in the context of an arrest or detention of one not then

incarcerated, not to disputes over sentence length. *Brooks v. George Co. Mississippi*, 84 F.3d 157,

166-7 (5th Cir.), *cert. denied*, 519 U. S. 948 (1996); *see also Torres v. McLaughlin*, 163 F.3d 169,

174 (3rd Cir. 1998) (post trial incarceration not Fourth Amendment seizure). Thus, these claims fail

as a matter of law.

## Due Process

Plaintiffs assert that they were  denied due process[16] because they were incarcerated beyond

---

[15]The only potential factual dispute between the parties relates to the personal involvement
of the named defendants. For purposes of deciding the pending motions, it will be assumed, without
deciding, that there was sufficient personal involvement on the part of the named defendants.

[16]Plaintiffs assert claims under both the Constitution of the United States and Article 24 of
the Maryland Declaration of Rights. As the due process guarantees of the Declaration of Rights are
in *pari materia* with those of the Fifth and Fourteenth Amendments, *Pitsenberger v. Pitsenberger*,
287 Md. 20, 27, 410 A.2d 1052, 1056, *app. dismissed*, 449 U. S. 807 (1980), the same analysis
applies to the state and federal claims.

11

their mandatory supervision release dates despite the fact that they "notified Defendants" that their diminution credits were being improperly calculated.

A prisoner challenging the way the DOC is calculating his mandatory supervision release date by controverting the number of diminution credits which are being applied has two possible avenues for relief in the state courts.

**1.    Administrative Proceedings**

Regardless of whether he believes he is entitled to an immediate release, a prisoner may challenge the calculation of his sentences and/or diminution credits through administrative proceedings by:

1.    Filing a request under the administrative remedy procedure, Division of Correction Directive 185-001 *et seq.,* to the warden of the institution where he is confined.

2.    Appealing a denial of the request by the warden to the Commissioner.

3.    Filing a complaint with the Inmate Grievance Office, ("IGO").

4.    Appealing a final decision of the IGO to the Circuit Court.

5.    Filing an application for leave to appeal to the Court of Special Appeals from the decision of the Circuit Court.

6.    If the Court of Special Appeals grants the application for leave to appeal, but denies relief on the merits, seeking *certiorari* to the Court of Appeals.

**2.    Habeas Corpus Proceedings**

A prisoner claiming an entitlement to an immediate release can also seek relief directly from the state courts by:

12

1.    Filing a petition for writ of habeas corpus in a Circuit Court.[17]

2.    Appealing a decision by the Circuit Court to the Court of Special Appeals.[18]

3.    Seeking *certiorari* to the Court of Appeals from a decision by the Court of Special

Appeals.

These procedures are clearly adequate to provide procedural due process. *Toney-El v. Franzen*, 777 F.2d 1224, 1227 (7th Cir. 1985), *cert. denied*, 476 U. S. 1178 (1986). All of the Plaintiffs exercised the latter course and were successful in either obtaining a court order or a settlement granting the relief they sought. Only Mr. Coleman appears to have attempted to utilize the former procedures. *See* L-98-3111, Paper No. 14, attached administrative remedy procedure request. The fact that he was not granted the relief sought does not constitute a denial of procedural due process.

Plaintiffs also argue that the fact that they were held beyond their release dates deprived them of substantive due process. There are circumstances under which a violation of a state law which does not infringe upon a specific constitutional right amounts to a "fundamental defect which inherently results in a complete miscarriage of justice." *Hailey v. Dorsey*, 580 F.2d 112, 115 (4th

---

[17]In *Fields*, the Maryland Court of Appeals held that a prisoner presenting a colorable claim of entitlement to immediate release based upon the calculation of diminution credits, was entitled to seek habeas corpus relief without first exhausting his administrative remedies. 348 Md. at 261. It did not address the situation where a prisoner was not claiming entitlement to immediate release.

[18]Although at one time, this Court interpreted Maryland law as not permitting an appeal of a Circuit Court decision denying habeas corpus relief except in very limited circumstances, *see Chavis v. Smith*, 834 F. Supp. 153, 158 (D. Md. 1993), later decisions by the Maryland Court of Appeals have made it clear that there is a right of appeal in cases where state habeas corpus relief has been sought challenging the calculation of sentences and/or diminution credits. *See Frost*, 336 Md. at 132 n.5; *Merritt v. Corcoran*, 105 Md. App. 109, 111, 658 A.2d 1153, 1154 (1995).

Cir. 1978) (quoting *Hill v. United States*, 368 U. S. 424, 428 (1962)), *cert. denied*, 440 U. S. 937

(1979). A dispute over diminution credits does not rise to this level. *Toney-El*, 777 F.2d at 1226;

*see also Willeford v. Estelle*, 538 F.2d 1194, 1196 (5th Cir. 1976) ("The length of the sentence of

a convicted criminal under state law is, without more, not a matter of federal constitutional

concern.").

## Cruel and unusual punishment

Plaintiffs also assert that they were subjected to cruel and unusual punishment because of the

delay in their release.[19] Analysis of Eighth Amendment claims "necessitates inquiry as to whether

the prison official acted with a sufficiently culpable state of mind (subjective component) and

whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective

component)." *Williams v. Benjamin*, 77 F.3d 756, 760 (4th Cir. 1996). In the context of a claim for

being held past his release date, a prisoner must show that prison officials were aware of the problem

in the calculation of his release date and acted (or failed to act) in such a manner as to evidence

deliberate indifference, and that their action or inaction was the proximate cause of his being

confined past his release date. *Moore v. Tartler*, 986 F.2d 682, 686 (3d Cir. 1993) (citing *Sample

v. Diecks*, 885 F.2d 1099, 1100 (3rd Cir. 1989)).

Plaintiffs' allegations do not reach the level of deliberate indifference. This is not a case

where prison officials calculated release dates in the manner which they believed to be appropriate

---

[19]Plaintiffs assert claims under both the Constitution of the United States and Article 25 of
the Maryland Declaration of Rights. As the prohibition on cruel and unusual punishment in the
Declaration of Rights is in *pari materia* with that of the Eighth Amendment, *Walker v. State*, 53 Md.
App. 171, 183, 452 A.2d 1234, 1240 (1982), the same analysis applies to the state and federal
claims.

14

and then deliberately held Plaintiffs after that date. Plaintiffs' diminution credits and mandatory supervision release dates were calculated in accordance with then existing DOC policy. It was not until the Maryland Court of Appeals issued its decision in *Fields* on December 15, 1997, that DOC officials knew that their prior interpretations were wrong and could be argued to have a sufficiently culpable state of mind if they had refused to change their policy.[20] All of the Plaintiffs were released **prior** to the *Fields* decision. It is clear that the miscalculation of their release dates was based on mistaken interpretations of Maryland law, and made without a sufficiently culpable state of mind.[21] *Puccini v. United States*, 978 F. Supp. 760, 761 (N.D. Ill. 1997) (where not clearly established that prisoner is entitled to credit against his sentence, prison officials do not act with deliberate indifference by refusing to grant credit).

**Qualified Immunity**

Alternatively, even if any of Plaintiffs' claims were to rise to a constitutional level, Defendants would be entitled to qualified immunity. "[G]overnment officials performing

---

[20]Plaintiffs argue that by December 27, 1996, when the Court of Special Appeals issued its decision, it was "clearly established" that prisoners with pre and post October 1, 1992 sentences should receive ten days good conduct credit per month on their post October 1, 1992 sentences and that it was inappropriate to make a deduction from diminution credits to offset street time allowed. This ignores the fact that the Court of Appeals granted *certiorari* to review the decision. The fact that an issue is pending in front of the Court of Appeals under a grant of discretionary review creates a question about the value of the lower court's decision as a definitive statement of Maryland law. Insofar as Mr. Coleman is concerned, it doesn't matter whether Maryland law became "clearly established" in December 1996 with the Court of Special Appeals decision or in December 1997 with the Court of Appeals decision. He was released in October 1996, **prior** to either decision.

[21]When Mr. Paulero and Mr. Holmes made the DOC aware that the calculation of their credits was effected by the decision of the Court of Special Appeals in *Fields* in the spring of 1997 by filing habeas corpus petitions, their credits were promptly recalculated and they were released without court intervention. Such action is not deliberate indifference.

15

discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U. S. 800, 818 (1982). "In analyzing a claim of qualified immunity it is therefore necessary first to identify the specific constitutional right allegedly violated, then to inquire whether at the time of the alleged violation it was clearly established, then further to inquire whether a reasonable person in the official's position would have known that the conduct would violate that right." *Collison v. Gott*, 895 F.2d 994, 998 (4th Cir. 1990) (Phillips, J. concurring) (cited with approval in *Pittman v. Nelms*, 87 F.3d 116, 119 (4th Cir. 1996).

In determining whether a right is clearly established "the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Anderson v. Creighton*, 483 U. S. 635, 641 (1987). "If there exists a 'legitimate question' as to whether particular conduct violates a particular right then the right is not clearly established and qualified immunity applies." *Korb v. Lehman*, 919 F.2d 243, 247 (4th Cir. 1990), *cert. denied*, 502 U. S. 808 (1991). "Thus, although the exact conduct at issue need not have been held to be unlawful in order the law governing an officer's actions to be clearly established, the existing authority must be such that the unlawfulness of the conduct is manifest." *Wilson v. Layne*, 141 F.3d 111, 114 (4th Cir. 1998), *aff'd*, 119 S. Ct. 1692 (1999).

While the right of a prisoner to be released at the end of his sentence, adjusted for the application of diminution credits, may have been clearly established at the time of the events giving rise to this suit occurred, given the confusing state of Maryland law on the calculation of diminution credits in 1996-1997, a reasonable prison official would not have know that calculating good conduct credits at the rate of five days per month rather than ten, for persons with both pre and post October

16

1, 1992 sentences, or that adjusting the number of diminution credits remaining after revocation of

mandatory supervision by the amount of street credit allowed, would violate that right.[22]  Thus,

Defendants are entitled to qualified immunity. *See Henderson v. Simms*, ___ F. Supp.2d ___, ___,

1999 WL 306879, *2 (D. Md. May 14, 1999).

## False Imprisonment

Finally, Plaintiffs allege that they were subjected to the tort of false imprisonment.  The

Maryland Court of Special Appeals recently held that prisoners who had their good conduct credits

incorrectly calculated at the rate of five days per month instead of ten, do not have a cause of action

for false imprisonment. *State v. Hall*, 122 Md. App. 664, 716 A.2d 335  (prisoner with pre and post

1992 sentences who only received five days good conduct credit per month on his post 1992

sentence was not confined illegally and thus not entitled to damages), *cert. denied*, 352 Md. 310, 721

a.2d 989 (1998).  The same rationale bars claims for false imprisonment resulting from improper

---

[22]Indeed, in deciding that prisoners with pre and post October 1, 1992 sentences were entitled to ten days good conduct credit per month on their post October 1, 1992 sentences, the Court of Appeals relied upon the rule of lenity, a principle that does not come into play except where an ambiguity exits. *Fields*, 348 Md. at 266-67, 703 A.2d at 178.

Plaintiffs argue that Defendants should have known that making a deduction from diminution credits to offset street time allowed would violate their constitutional rights because neither Art. 27, §700, nor Art. 41, §4-612 contains a provision authorizing such a deduction by the DOC.  The DOC believed that awarding a prisoner credit for street time without making a corresponding adjustment to diminution credits would result in the prisoner effectively being credited with the same diminution credits twice.  The policy of deducting from a prisoner's diminution credits an amount equal to the street time awarded was designed to correct this perceived double dipping.  L-98-3112, Paper No. 8, affidavit of Arthur Crawmer.  In light of the Court of Appeals earlier decision that the pre-1989 mandatory supervision statute which did not contain any provision for rescission of diminution credits, in fact required their recision, the theory that an offset should be made was not so obviously an incorrect interpretation of the law, that a reasonable prison official would have known that it would result in constitutional violations.  Moreover, the policy had been reviewed and approved by counsel. *Id*.

calculation of diminution credits following revocation of mandatory supervision.

**Conclusion**

Accepting all of Plaintiffs' factual allegations as true, and drawing from them all justifiable inferences in Plaintiffs favor, *see Estate of Kimmel v. Seven-Up Bottling Co.*, 993 F.2d 410, 412 (4th Cir. 1993) (citation omitted), Plaintiffs have "fail[ed] to make a showing sufficient to establish the existence of element[s] essential to [their] case and on which that [they] will bear the burden of proof at trial," making summary judgment appropriate. *Celotex Corp. v. Catrett*, 477 U. S. 317, 322 (1986). Accordingly, a separate Order will be entered granting Defendants' motions.

_Sept. 29, 1999_
Date

_Benson Legg_
Benson Everett Legg
United States District Judge

18